**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. COLETTE ARINWINE-WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-15- 1386-F |
| | ) | |
| 1. UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW THE PLAINTIFF** and for her causes of action herein alleges that:

**PARTIES**

1. The Plaintiff is Colette Arinwine-Wallace, an adult resident of Oklahoma County, Oklahoma.

2. The Defendant is the United Parcel Service, Inc., a foreign-for profit business corporation doing business in Oklahoma County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action for discrimination based on disability as prohibited by the Americans With Disabilities Act, as amended, and for race discrimination, including retaliation for complaints of such discrimination. The disability claim arises under 42 U.S.C. §12101, et seq and the race claims arise under Title VII of the Civil Rights of 1964 and 42 U.S.C. § 1981. Jurisdiction over the ADA and Title VII claims is vested pursuant to 42 U.S.C. §§ 2000e-5(f)(1) and 12117(a). Jurisdiction over the Sec. 1981 claim arises under 28 U.S.C. § 1983.

4. All of the actions complained of occurred in Oklahoma County, Oklahoma, and the Defendant may be served in that county, wherefore venue is proper in this Court under  42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Plaintiff, an African American woman, was employed by the Defendant since approximately October 1994, as a package car driver with Defendant.

6. Defendant is an employer engaged in interstate commerce which has employed more than twenty (20) employees during each week of the calendar years of 2012 through the present. As a result the Defendant is a covered employer under both the Americans with Disabilities Act as Amended (ADAAA), Title VII and 42 U.S.C. § 1981.

7. Subsequent to her hiring and beginning approximately 2012, Plaintiff began to suffer from systemic lupus erythematosus ("lupus"), which without regard to mitigating treatment substantially impairs Plaintiff's major life activities and/or major bodily functions in that:

   A. Plaintiff's immune system attacks the healthy tissue, cells, and organs in her body;

   B. Plaintiff's ability to walk, sleep, sit, stand, lay down, etc., are substantially impaired in that moving her body causes excruciating pain during flare ups;

   C. Plaintiff is sensitive to ultra violet rays and/or heat and/or extreme cold such that she must wear sunscreen and protective clothing or experience extreme pain;

   D. Plaintiff experiences loss of sensation in her extremities which interferes with her ability to, among other things, grip items or walk.

8. Plaintiff has been treated for this condition by her physicians, including at least a regimen of medications, surgeries and at times hospitalization. Plaintiff advised Defendant, through Mike Griggs (supervisor) and Joe Mullett (Division Director) shortly after her diagnosis and believed to be in 2012 regarding this condition. Records of such treatment have been supplied to Defendant in connection with

   Plaintiff's leave requests and/or application for Family Medical Leave Act coverage.

9.  Plaintiff is regarded as disabled in that Defendant placed Plaintiff on residual status, lowering her work hours and changing her assigned routes expressly because of the conditions and limitations associated with her disability.

10.  As a result of the impairments, treatment and notice set out above, Plaintiff is a disabled employee under one or all three of the definitions of disability under the ADAAA.

11.  To Plaintiff's recollection, her primary interactions with Wade Baldwin began around the summer of 2012 when Plaintiff began seeking promotions to better job opportunities. Around this time period, Plaintiff started becoming more ill and noticing more symptoms requiring her to take off more time from work. Wade Baldwin, transportation services supervisor (Caucasian), thereafter refused to promote Plaintiff to Feeder Driver despite her seniority, application, and completion of training. Other, white employees with less tenure and/or experience were given the promotion sought by the Plaintiff.

12.  Plaintiff was diagnosed with lupus by her physicians around November 2012. Soon thereafter Plaintiff notified Defendant of her condition by talking to Mike Griggs, Plaintiff's supervisor and center manager (Caucasian), and Joe Mullett, division manager (Caucasian), including identifying and describing her condition, as well as the required future treatment. In 2013, Plaintiff advised Mr. Baldwin of her lupus condition.

13.  Beginning in November 2012, Plaintiff would request the reasonable accommodation of intermittent time off work for medical treatment for her condition. Defendant granted Plaintiff's requests for protected leave, and placed Plaintiff on "residual" status beginning in February 2013, resulting in her working a shorter route. Plaintiff does not contend that this was an unreasonable accommodation.

14. In April 2013, Plaintiff applied for the position of Feeder Driver. A Feeder Driver drives a semi-truck which is air conditioned and does not require lifting. Both of these changes would have helped Plaintiff with her lupus limitations and reduced the impact of those limitations. Such position also has nighttime work, which would allow Plaintiff to receive medical treatment without missing work and decrease the sun-related symptoms.

15. During the approximately ten-day course, Plaintiff discussed daily with Mr. Baldwin her medical condition and that the promotion would enable Plaintiff to work more stable hours.

16. Despite Plaintiff's qualifications and seniority, including completion of the course, Mr. Baldwin refused to promote Plaintiff in 2013, instead promoting three Caucasian employees who had less seniority than Plaintiff, and to Plaintiff's knowledge did not suffer from a disability.

17. After Mr. Baldwin refused to provide Plaintiff with the promotion to Feeder Driver in 2013, Plaintiff filed a grievance based on her seniority status. Plaintiff's grievance was successful and Mr. Baldwin was directed to put Plaintiff in the next training class for the same position (April 2014).

18. During the 2014 Feeder Driver training, Plaintiff again discussed her medical condition on a daily basis with Mr. Baldwin, describing again how well the Feeder Driver position helped accommodate her disability.

19. Despite this feedback and her successful performance in the he course of training in 2014, Mr. Baldwin commented that Plaintiff has "too much going on for herself," citing Plaintiff's disability, and stated that he believed she could not handle being promoted to Feeder Driver. He then removed the Plaintiff from the training program before its completion and also removed the Plaintiff from the work rotation, placing her on an on-call status.

20. While the training was going, around April 5, 2014, Mr. Baldwin commented to Plaintiff that African Americans should not wear their hair in braids in the workplace because it was not professional. To Plaintiff's information and belief, Mr. Baldwin has not promoted any African-Americans to this position and Plaintiff was the only person that he removed from such position.

21. The reason given by Mr. Baldwin for his refusal to allow Plaintiff to complete training was his claim that she was an unsafe driver. This is pretextual in that he had evaluated Plaintiff's driving and not made any note shown to or known by the Plaintiff that she was unsafe. When Plaintiff later grieved the matter, Mr. Baldwin could not supply any documents to support that claim and instead pulled Plaintiff's attendance record which was not a reason given at the time. Plaintiff's attendance was adversely impacted by her disability and the need for treatment. The real reason for Mr. Baldwin refusing to complete Plaintiff's training was her disability and/or her race.

22. On April 16, 2014, Plaintiff learned by receipt of a "48 hour notice to terminate" sent by certified mail, that notwithstanding Mr. Baldwin's instruction that Plaintiff be on call for work, Mr. Baldwin attempted to have Plaintiff terminated for 'no call/no show'. Because Plaintiff learned of this action and went in, Plaintiff was able to avoid termination but she was not returned to the work schedule.

23. Thereafter, beginning in April 2014, Plaintiff was required to call in to work on a daily basis to find out if there was a job for her to do. However, Plaintiff was not provided any work.

24. Plaintiff filed an internal grievance on or about July 2014, which, as part of the allegations complained of Defendant's refusal to treat Plaintiff like other employees, including employees who are not disabled and/or who are not African American.

25. Following the raising of the discrimination in her grievance, Defendant further

retaliated by instructing Plaintiff to stop calling in for work; rather, that Defendant would contact Plaintiff if work became available for her. Defendant has since not called Plaintiff to work.

26. As a result of not being returned to the work schedule, Plaintiff has suffered injuries in the form of lost wages and continued dignitary harm from the hostility of listing her as an employee while refusing to allow her to return to work. Because of the prolonged nature of the removal from the schedule, Defendant's action may be considered in the nature of a termination either actual or constructive.

27. Plaintiff's job position continued to exist and to be filled by persons who were not of her race and/or disability after she was removed from the schedule.

28. As the direct and proximate result of the Defendant's discrimination and retaliation, Plaintiff has suffered actual damages in the form of dignitary harm and lost income and benefits, past, present and future as well as nominal damages for the denial of her federally protected rights..

29. Because the actions of the Defendant were willful or reckless, and were carried out by managers of the Defendant, Plaintiff is also entitled to an award of punitive damages as allowed by law.

30. Plaintiff timely filed her charge of discrimination alleging discrimination and a hostile environment based on disability, race and retaliation. Such charge was filed with the EEOC on or about Oct. 21, 2014, which was less than 300 days from the adverse action of removing her from the training program and payroll. Plaintiff's right to sue letter was issued on or about Sept. 29, 2015, and received thereafter. This action is filed within ninety (90) days of the date of issuance and is timely filed without regard to the additional time allowed for receipt of the notice by the Plaintiff. To the extent that any of the charges set out are deemed not within the face of the charge, they are part of the materials provided to the EEOC and would be within the scope of a

reasonable investigation.  Moreover, there is not exhaustion requirement for Sec. 1981 actions and the statute of limitation for such action, arising post employment, is four years.

**WHEREFORE,** Plaintiff prays that judgement be granted in her favor and against the Defendant on all of her claims, and that this Court grant all available relief including, but not limited to, compensatory damages, punitive damages, costs, attorney's fees, and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS  28th  DAY OF DECEMBER 2015**.

HAMMONS, GOWENS, HURST & ASSOC.

s/ Leah M. Roper
Mark Hammons, OBA No. 3748
Amber L. Hurst OBA No. 21231
Leah M. Roper, OBA No. 32107
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: leah@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED


reasonable investigation.  Moreover, there is not exhaustion requirement for Sec. 1981 actions and the statute of limitation for such action, arising post employment, is four years.

**WHEREFORE,** Plaintiff prays that judgement be granted in her favor and against the Defendant on all of her claims, and that this Court grant all available relief including, but not limited to, compensatory damages, punitive damages, costs, attorney's fees, and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS  28th  DAY OF DECEMBER 2015**.

HAMMONS, GOWENS, HURST & ASSOC.

s/ Leah M. Roper
Mark Hammons, OBA No. 3748
Amber L. Hurst OBA No. 21231
Leah M. Roper, OBA No. 32107
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: leah@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED